Daniel J. Wadley (Utah Bar No. 10358)
Nicholas P. Peterson (Utah Bar No. 19177)
GREENBERG TRAURIG LLP
222 S. Main St., Suite 1730
Salt Lake City, UT 84101
Tel: (801) 478-6900
wadleyd@gtlaw.com
nick.peterson@gtlaw.com

Bill E. Davidoff (Texas Bar No. 00790565) (*pro hac vice forthcoming)*
FIGARI + DAVENPORT, LLP
901 Main Street, Suite 3400
Dallas, TX 75202
Tel: 214.939.2000
bill.davidoff@figdav.com

*Attorneys for Plaintiffs MSH Oil, LLC and Blue Chip Capital LLC*

---

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**CENTRAL DIVISION**

---

| | |
|---|---|
| MSH OIL, LLC, a Texas limited liability Company, and BLUE CHIP CAPITAL LLC, a Texas limited liability company,<br><br>Plaintiffs,<br>v.<br><br>OPTIO SERVICES, LLC, a Wyoming limited liability company, YASSER ELGEBALY, an individual,<br>D. BRYAN FERRE, an individual,<br>and SOVREN TECHNOLOGIES, INC.,<br><br>Defendants. | **PLAINTIFFS' ORIGINAL COMPLAINT**<br><br>**JURY DEMANDED**<br><br>Case No. 26-cv-00871<br><br>The Honorable __________ |

# PLAINTIFFS' ORIGINAL PETITION

Plaintiffs MSH Oil, LLC ("MSH") and Blue Chip Capital LLC ("Blue Chip," and together with MSH, the "Investors" or "Plaintiffs"), by and through undersigned counsel, complain and allege against Defendants Optio Services, LLC ("Optio" or the "Company"), Yasser Elgebaly ("Elgebaly"), D. Bryan Ferre ("Ferre," and together with Elgebaly, the "Guarantors"), and Sovren Technologies, Inc. ("Sovren") as follows:

## I. NATURE OF THE ACTION

1. This action arises from a fraudulently induced investment. In March 2026, the Investors committed up to $750,000 in capital to Optio in exchange for preferred equity, in reliance on Optio's written representations that the funds would be used for the Company's "general working capital and business purposes" and on Optio's representations concerning the sources and nature of its revenue.

2. Those representations were false. Rather than deploy the Investors' capital for Optio's own working capital and business purposes, Optio diverted the funds to pay the payroll obligations of Sovren—a separate and unrelated company. Optio also misrepresented the sources of its revenue at the time the investment was made, inducing the Investors to purchase securities whose entire economic return depended on a revenue stream that Optio misrepresented.

3. The Investors bring claims against Optio for breach of contract, breach of the implied covenant of good faith and fair dealing, breach of guaranty, fraud and negligent misrepresentation, and violations of Utah and federal securities laws; against the

Guarantors, Elgebaly and Ferre, for the misrepresentations and on their personal guaranty; and against Sovren for unjust enrichment, civil conspiracy, aiding and abetting, and fraudulent transfer arising from its receipt and retention of the diverted funds. The Investors seek rescission, compensatory and statutory damages, disgorgement, imposition of a constructive trust, and related relief.

## II. THE PARTIES

4. Plaintiff MSH Oil, LLC is a Texas limited liability company. MSH is managed by Michael Hynek.

5. Plaintiff Blue Chip Capital LLC is a Texas limited liability company. Blue Chip is managed by Mark Cohen.

6. Defendant Optio Services, LLC is a Wyoming limited liability company. At all relevant times Optio transacted business with the Investors and issued the securities at issue in this action. Optio may be served through its registered agent Northwest Registered Agent Service Inc. at 30 N Gould Street, Suite N, Sheridan, Wyoming 82801.

7. Defendant Yasser Elgebaly is an individual and, at all relevant times, was the Chief Executive Officer of Optio. Elgebaly executed the Equity Purchase Agreement on behalf of Optio and executed the personal Guaranty in his individual capacity. Elgebaly may be served at 5700 Tennyson Parkway, Ste. 200, Plano, Texas 75024.

8. Defendant D. Bryan Ferre is an individual who, at all relevant times, was a member, manager, principal, or beneficial owner of Optio. Ferre executed the personal Guaranty in his individual capacity and may be served at 1522 N. 340 East, Pleasant Grove, Utah 84062.

9. Defendant Sovren Technologies, Inc. is, on information and belief, a Nevada corporation. On information and belief, Sovren is owned, controlled by, or otherwise affiliated with one or more of Optio, Elgebaly, and Ferre. Sovren may be served through its registered agent Corporate Creations Network Inc. at 112 North Curry Street, Carson City, Nevada 89703.

## III. JURISDICTION AND VENUE

10. This Court has subject-matter jurisdiction over Plaintiffs' federal securities claims under Section 27 of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78aa, and 28 U.S.C. § 1331, because those claims arise under the laws of the United States. Section 27 of the Exchange Act vests exclusive jurisdiction over claims under Section 10(b) and Rule 10b-5 in the federal district courts.

11. This Court has supplemental jurisdiction over Plaintiffs' related state-law claims under 28 U.S.C. § 1367 because those claims form part of the same case or controversy as the federal claims, arising from a common nucleus of operative fact—the Investors' investment in Optio and the diversion of their funds.

12. This Court has personal jurisdiction over Defendants because Defendants transacted the business giving rise to this action within Utah, because Defendant Ferre resides in Utah, and because each Defendant party to the Equity Purchase Agreement and the Guaranty irrevocably consented to the exclusive jurisdiction of the state and federal courts located in Salt Lake County, Utah.

13. Venue is proper in this District under 28 U.S.C. § 1391 and Section 27 of the Exchange Act, 15 U.S.C. § 78aa, because a substantial part of the events giving rise to the

claims occurred in this District and because the parties agreed, by mandatory forum-selection clause, that any action arising out of or relating to the Equity Purchase Agreement and the Guaranty "shall be brought exclusively in the state or federal courts located in Salt Lake County, Utah."

14. The Equity Purchase Agreement and the Guaranty are each governed by the laws of the State of Utah.

## IV. FACTUAL ALLEGATIONS

### A. The Equity Purchase Agreement

15. On or about March 3, 2026, the Investors and Optio entered into an Equity Purchase Agreement (the "Agreement"), a true and correct copy of which is attached as Exhibit 1.

16. Under the Agreement, the Investors committed to purchase up to $750,000 of preferred limited liability company units in Optio (the "Preferred Units"), to be drawn in three separate tranches of $250,000 each at the Company's option.

17. The Preferred Units carried a 1x distribution preference payable through a revenue-share model. For each funded tranche, Optio was obligated to pay the Investors a preferred distribution equal to the "Preference Amount"—a 1x return of $250,000 per tranche—payable through a monthly Revenue Share of up to 50% of the Company's Net Revenues until the preference was satisfied.

18. "Net Revenues" is defined as the gross revenues of the Company "from all sources" during the applicable period, less returns, taxes, and direct costs of goods sold or

services rendered. The Investors' entire economic return thus depended on Optio generating genuine operating revenue.

19. The initial Closing took place as of the Effective Date and simultaneously upon execution of the Agreement, at which the first tranche of $250,000 was to be funded.

20. In reliance on Optio's representations, the Investors funded the full amount provided for under the Agreement, as follows: $500,000 in March 3, 2026, and $250,000 in March 11, 2026.

**B. <u>Optio's Representations to Induce the Investment</u>**

21. To induce the Investors to purchase the Preferred Units, Optio made a series of representations and warranties in the Agreement, each of which was made "as of the Effective Date and as of each Closing Date":

a. **Use of proceeds.** In Section 4.6 of the Agreement, Optio represented and warranted that "[t]he proceeds of the Investor's investment shall be used by the Company for general working capital and business purposes."

b. **Sources of revenue.** The Agreement was expressly structured around Optio's revenue. The revenue-share preference, the definition of Net Revenues "from all sources," and Optio's covenant to deliver monthly statements calculating Net Revenues all represented to the Investors that Optio had bona fide, ongoing revenue-generating operations sufficient to return the Investors' capital. At and before the time of the investment, Optio, through

Elgebaly and Ferre, represented to the Investors the nature and sources of the Company's revenue.

c. **Capitalization.** In Section 4.4, Optio represented and warranted that it had disclosed to the Investors "a true, correct, and complete capitalization table of the Company as of the Effective Date."

d. **Ownership.** Finally, Elgebaly, Ferre, and Anne Peterson ("Peterson") represented that Optio's ownership was as follows: (1) Yee Trust[1] – 51%; (2) MMHM Holdings, LLC[2] – 40%; and (3) Peterson – 9%.

22. The Investors relied on Optio's representations, and Optio knew the Investors were relying on them. The Agreement expressly provided that the Investors' right to rely on Optio's representations and warranties was not modified or affected by any inquiry or investigation the Investors conducted.

## C. The Personal Guaranty

23. As a material inducement to the Investors to enter into the Agreement and fund the tranches, Elgebaly and Ferre executed a personal Guaranty Agreement (the "Guaranty"), attached as Exhibit A to the Agreement.

24. Under the Guaranty, Elgebaly and Ferre "irrevocably, absolutely, and unconditionally" guaranteed, jointly and severally, the full and punctual payment and

[1] Elgebaly signed as Trustee.
[2] Ferre signed as Member.

performance of all amounts funded by the Investors under the Agreement, including the return of any tranche amounts upon Optio's default and all other amounts due, including damages and indemnification obligations.

25. Each Guarantor represented that he was a member, manager, or principal of Optio with a direct and material interest in the Company and the transactions contemplated by the Agreement, and that he was solvent and had the financial capacity to satisfy the guaranteed obligations.

**D. The Diversion of Funds to Sovren and the Falsity of Optio's Representations**

26. Optio's representations were false when made. Instead of using the Investors' capital for Optio's own general working capital and business purposes as represented in Section 4.6, Optio diverted the Investors' funds to pay the payroll obligations of Sovren—a separate and unrelated company.

27. On information and belief, at the time Optio made the representation in Section 4.6, Optio, Elgebaly, and Ferre did not intend to use the Investors' capital for Optio's general working capital and business purposes, but instead intended to divert those funds to Sovren.

28. On information and belief, Optio also misrepresented the sources of its revenue at the time the investment was made. The revenue-generating operations and sources on which the Investors' revenue-share return depended did not exist as represented, or generated materially less revenue than Optio represented, rendering the Company unable to satisfy the preference the Agreement promised.

29. The diversion of the Investors' funds to pay the expenses of an unrelated company, and the misrepresentation of Optio's revenue sources, were material. Had the Investors known that their capital would be used to fund an unrelated company's expenses, or that Optio's represented revenue sources were false, they would not have purchased the Preferred Units.

30. On information and belief, Sovren knew or should have known that the funds it received to meet its payroll were the Investors' capital, diverted from Optio in breach of Optio's obligations and representations to the Investors, and Sovren accepted and retained the benefit of those funds.

31. Optio has failed to make the Revenue Share and preferred distribution payments due under the Agreement and has failed to return the Investors' capital. The Investors have been damaged in an amount to be proven at trial, but not less than the amount they funded, together with interest, costs, and fees.

## E. <u>The Investor's Right to Financial Information</u>

32. Section 3.2 of the Agreement requires that, together with each monthly Revenue Share payment, Optio "deliver to the Investors a written statement setting forth in reasonable detail the calculation of Net Revenues for the applicable period" and the cumulative Revenue Share payments made to date.

33. Section 3.6 of the Agreement requires Optio to maintain accurate books and records reflecting its revenues, expenses, and Net Revenues in accordance with generally accepted accounting principles, and gives the Investors the right, on no less than ten

business days' written notice, to inspect and audit Optio's books and records as they relate to the calculation of Net Revenues and Revenue Share payments.

34. The Investors cannot determine, verify, or enforce whether Optio has correctly calculated and paid the Revenue Share to which they are entitled without the Net Revenue statements and the books and records that Sections 3.2 and 3.6 require Optio to provide.

**F. <u>Optio's Obligation to Negotiate the Operating Agreement in Good Faith</u>**

35. Section 6.1 of the Agreement provides that, promptly following the initial closing and in any event within ninety (90) days thereafter, "the Parties shall negotiate in good faith to adopt or amend an operating agreement of the Company (the 'Operating Agreement') reflecting market-standard terms and conditions for a limited liability company of similar size, structure, and purpose, and incorporating all necessary provisions from this Agreement."

36. Section 6.3 specifies the market-standard terms the Operating Agreement must contain, including capital contributions and capital accounts reflecting the Investors' funding, distribution provisions consistent with Article III, anti-dilution protections consistent with Section 2.4, management and governance provisions, transfer restrictions, allocations of profit and loss, tax matters, books and reporting obligations, indemnification, dissolution, and governing law.

37. Pending execution of the Operating Agreement, Section 6.4 entitles the Investors to all rights and preferences set forth in the Agreement and prohibits Optio from

taking any action that would materially and adversely affect those rights without the Investors' prior written consent.

**G. Misrepresentations Regarding the Ownership Structure of Optio**

38. Despite the representations to the contrary, by email dated April 9, 2026, Optio's counsel advised the Investors that Optio is "100% owned by Optio Group LLC."

**H. Optio Conditions the Required Financial Information on the Investors Signing the Restrictive Covenant Agreement**

39. Rather than deliver the Net Revenue statements and books and records the Agreement requires, and rather than negotiate the Operating Agreement in good faith, Optio conditioned the Investors' access to complete financial information on the Investors' execution of a separate Restrictive Covenant Agreement (the "RCA"), a true and correct copy of which is attached as Exhibit 2.

40. The RCA is not required by, referenced in, or contemplated by the Equity Purchase Agreement, which constitutes the entire agreement of the parties with respect to its subject matter and supersedes all prior and contemporaneous understandings.

41. The RCA would bind each Investor to a non-competition covenant providing that, so long as the Investor is a member and for a period of two years thereafter, the Investor "will not own, manage, engage in, operate, or conduct or assist any business" that provides services the same as, similar to, or competitive with any business conducted by Optio or its subsidiaries or affiliates.

42. The RCA would also bind each Investor to a two-year non-solicitation covenant restricting the Investor's dealings with Optio's employees, customers, suppliers, referral sources, investors, and business relations.

43. Moreover, the proposed RCA would be governed by Texas law and would require any dispute to be litigated exclusively in Collin County, Texas—not in Utah, the forum the Equity Purchase Agreement designates.

44. The Investors declined to sign the RCA, which would have subjected them to competitive and litigation restrictions to which they never agreed in the Equity Purchase Agreement.

45. Notwithstanding the Investors' entitlement to the information under the Agreement, Optio has not delivered complete Net Revenue statements or provided the books and records required by Sections 3.2 and 3.6, and has not negotiated the Operating Agreement in good faith as required by Section 6.1.

46. As a direct and proximate result of Optio's conduct, the Investors have been deprived of the benefits of their bargain—including the ability to verify and enforce their revenue-share preference and to obtain the governance and information rights the Operating Agreement was to provide—and have been damaged in an amount to be determined at trial.

## V. CAUSES OF ACTION

### COUNT I – BREACH OF CONTRACT *(AGAINST OPTIO)*

47. Plaintiffs incorporate by reference the preceding paragraphs as though fully set forth herein.

48. Under Utah law, a claim for breach of contract has four elements: (1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages.

49. The Agreement is a valid and enforceable contract between the Investors and Optio.

50. The Investors performed their obligations under the Agreement, including funding their required capital commitment.

51. Optio breached the Agreement, including by (a) failing to use the proceeds of the Investors' investment for the Company's general working capital and business purposes as required by Section 4.6, and instead diverting them to fund Sovren's payroll; (b) failing to pay the preferred distributions and monthly Revenue Share required by Article III and failing to return the Investors' capital; and (c) failing to accurately represent Optio's ownership structure.

52. As a direct and proximate result of Optio's breaches, the Investors have been damaged in an amount to be proven at trial, together with interest, costs, and reasonable attorneys' fees as provided in Section 8.10 of the Agreement.

53. Optio also breached the Agreement by failing to deliver complete monthly written statements calculating Net Revenues required by Section 3.2 and by failing to maintain and make available for inspection and audit the books and records required by Section 3.6. Investors are entitled to specific performance compelling Optio to deliver the Net Revenue statements and to produce the books and records required by Sections 3.2 and 3.6.

54. Optio also breached the Agreement by refusing to negotiate the Operating Agreement in good faith and by conditioning any further negotiation and the delivery of required financial information on the Investors' execution of the RCA—a demand the Agreement does not authorize. By reason of the foregoing, Optio is liable to the Investors for damages in an amount to be determined at trial, and the Investors are entitled to specific performance compelling Optio to negotiate the Operating Agreement in good faith as required by Section 6.1.

**COUNT II – BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING *(AGAINST OPTIO)***

55. Plaintiffs incorporate by reference the preceding paragraphs as though fully set forth herein.

56. Utah law implies a covenant of good faith and fair dealing in every contract, under which each party impliedly promises not to intentionally do anything to injure the other party's right to receive the benefits of the contract.

57. The Investors' benefit under the Agreement was the return of their capital through the 1x revenue-share preference, funded by Optio's genuine operating revenue.

58. Optio breached the implied covenant by diverting the Investors' capital to Sovren's payroll and by conducting its affairs so as to deprive the Investors of the revenue stream and the return of capital the Agreement contemplated, thereby destroying the Investors' right to receive the fruits of the Agreement.

59. As a direct and proximate result, the Investors have been damaged in an amount to be proven at trial.

**COUNT III – FRAUDULENT MISREPRESENTATION *(AGAINST OPTIO, ELGEBALY, AND FERRE)***

60. Plaintiffs incorporate by reference the preceding paragraphs as though fully set forth herein.

61. The elements of fraud under Utah law are: (1) a representation; (2) concerning a presently existing material fact; (3) which was false; (4) which the representor either knew to be false or made recklessly, knowing there was insufficient knowledge on which to base the representation; (5) for the purpose of inducing the other party to act; (6) that the other party, acting reasonably and in ignorance of its falsity, (7) did in fact rely on it; (8) and was thereby induced to act; (9) to that party's injury and damage.

62. A misrepresentation concerning present financial condition—including a party's present sources and existence of revenue—is a misrepresentation of a presently existing material fact actionable as fraud. Optio, through Elgebaly and Ferre, represented to the Investors, on and before March 3, 2026, that the Company had bona fide operating revenue and revenue sources sufficient to fund the revenue-share preference. Those representations were false when made.

63. In addition, a promise of future performance made with a present intent not to perform, for the purpose of inducing reliance, constitutes actionable fraud under Utah law. Such a promise is actionable where the representor, at the time of the representation, did not intend to perform and made the representation to deceive. In Section 4.6 of the Agreement, executed by Elgebaly, Optio represented that the proceeds of the Investors' investment "shall be used by the Company for general working capital and business

purposes." On information and belief, Optio, Elgebaly, and Ferre made that representation with no intention of performing it, intending instead to divert the funds to Sovren's payroll.

64. Optio, through Elgebaly and Ferre, also represented in Section 4.4 that Optio had disclosed a "true, correct, and complete" capitalization table as of the Effective Date.

65. Elgebaly, Ferre, and Peterson also represented that Optio's ownership structure was as follows: (1) Yee Trust – 51%; (2) MMHM Holdings, LLC – 40%; and (3) Peterson – 9%.

66. Each of the foregoing representations concerned a material fact. Optio, Elgebaly, and Ferre either knew the representations were false or made them recklessly without sufficient knowledge of their truth, and made them for the purpose of inducing the Investors to purchase the Preferred Units and fund their capital.

67. The Investors, acting reasonably and in ignorance of the falsity of the representations, in fact relied on them and were thereby induced to purchase the Preferred Units and fund their capital. The Investors' reliance was justifiable.

68. As a direct and proximate result of the misrepresentations, the Investors have suffered injury and damage in an amount to be proven at trial, and are entitled to compensatory and punitive damages.

**COUNT IV – NEGLIGENT MISREPRESENTATION**
***(AGAINST OPTIO, IN THE ALTERNATIVE TO COUNT III)***

69. Plaintiffs incorporate by reference the preceding paragraphs as though fully set forth herein.

70. Under Utah law, a party injured by reasonable reliance on another's careless or negligent misrepresentation of a material fact may recover where the party supplying the information had a pecuniary interest in the transaction, was in a superior position to know the material facts, and should reasonably have foreseen that the injured party was likely to rely on the information. The duty is to exercise reasonable care or competence in obtaining and communicating the information supplied. The elements of intentional fraud need not be independently established.

71. Optio had a pecuniary interest in the Investors' investment, was in a superior position to know the true sources of its revenue, the true use to which the proceeds would be put, and its true capitalization, and should reasonably have foreseen that the Investors would rely on its representations concerning those matters.

72. Optio failed to exercise reasonable care or competence in making the representations described above, which were false, and on which the Investors reasonably relied to their detriment.

73. As a direct and proximate result, the Investors have been damaged in an amount to be proven at trial.

## **COUNT V – VIOLATION OF THE UTAH UNIFORM SECURITIES ACT (UTAH CODE ANN. §§ 61-1-1, 61-1-22) *(AGAINST OPTIO, ELGEBALY, AND FERRE)***

74. Plaintiffs incorporate by reference the preceding paragraphs as though fully set forth herein.

75. The Preferred Units are "securities" within the meaning of the Utah Uniform Securities Act, which defines a "security" to include an interest in a limited liability company.

76. It is unlawful under Utah Code Ann. § 61-1-1(2), in connection with the offer, sale, or purchase of any security, to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

77. In connection with the sale of the Preferred Units, Optio made untrue statements of material fact and omitted material facts necessary to make its statements not misleading, including its representations concerning the use of proceeds, the sources of its revenue, and its capitalization.

78. Under Utah Code Ann. § 61-1-22(1), a person who offers, sells, or purchases a security in violation of Section 61-1-1(2) is liable to the purchaser, who may sue at law or in equity to recover the consideration paid for the security, together with interest at 12% per year from the date of payment, costs, and reasonable attorneys' fees, upon tender of the security, or for damages if the purchaser no longer owns the security.

79. The violation was reckless or intentional, entitling the Investors to an award of up to three times the consideration paid, together with interest, costs, and attorneys' fees, under Utah Code Ann. § 61-1-22(2).

80. Elgebaly and Ferre are jointly and severally liable to the same extent as Optio under Utah Code Ann. § 61-1-22(4), as persons who directly or indirectly controlled Optio

and as partners, officers, directors, or persons occupying a similar status or performing similar functions who materially aided in the sale.

81. The Investors are entitled to rescission and the statutory remedies described above.

**COUNT VI – VIOLATION OF SECTION 10(B) OF THE SECURITIES EXCHANGE ACT OF 1934 AND RULE 10B-5**
***(AGAINST OPTIO, ELGEBALY, AND FERRE)***

82. Plaintiffs incorporate by reference the preceding paragraphs as though fully set forth herein.

83. Section 10(b) of the Securities Exchange Act of 1934 makes it unlawful to use or employ, in connection with the purchase or sale of any security, any manipulative or deceptive device in contravention of the rules of the Securities and Exchange Commission, and Rule 10b-5 makes it unlawful to make any untrue statement of a material fact or to omit a material fact necessary to make statements made not misleading.

84. To state a claim under Section 10(b) and Rule 10b-5, a plaintiff must allege (1) a material misrepresentation or omission; (2) scienter; (3) a connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation.

85. The Preferred Units are securities. Whether an interest in a limited liability company is an "investment contract" security under federal law turns on the control test: an interest is a security where the investor's expected profits are to come from the efforts of others and the investor lacks the power to control the profitability of the investment. The Investors held passive preferred interests, were not admitted as managing members, and

depended entirely on Optio's management for the revenue that would generate their return; their Preferred Units are therefore securities.

86. In connection with the sale of the Preferred Units, Optio, through Elgebaly and Ferre, made material misrepresentations and omissions concerning the use of proceeds, the sources of Optio's revenue, and its capitalization.

87. Optio, Elgebaly, and Ferre acted with scienter—with intent to defraud or with recklessness—in making those misrepresentations and omissions, as evidenced by their diversion of the Investors' funds to Sovren's payroll contrary to the express use-of-proceeds representation.

88. The misrepresentations and omissions were made in connection with the Investors' purchase of the Preferred Units, the Investors relied on them, and the Investors suffered economic loss proximately caused by the misrepresentations and omissions.

89. Elgebaly and Ferre are liable as controlling persons of Optio under Section 20(a) of the Exchange Act, jointly and severally with and to the same extent as Optio.

90. As a direct and proximate result, the Investors have been damaged in an amount to be proven at trial.

**COUNT VII – BREACH OF GUARANTY *(AGAINST ELGEBALY AND FERRE)***

91. Plaintiffs incorporate by reference the preceding paragraphs as though fully set forth herein.

92. Under the Guaranty, Elgebaly and Ferre jointly and severally guaranteed the return of the tranche amounts funded by the Investors upon Optio's default and all other amounts due from Optio under the Agreement.

93. Optio has defaulted on its obligations under the Agreement, including its obligation to return the Investors' capital and to make the required distributions. Amounts guaranteed are due and owing, and the Guarantors have failed to pay them despite demand.

94. The Guaranty states that it "is a guaranty of collection." Under Utah law, a guaranty of collection is conditional, and the guarantor's liability depends on the creditor's first exhausting its remedies against the debtor and any security, or establishing that the debtor is insolvent or that it is otherwise useless to proceed against the debtor.

95. That condition is satisfied, or excused, here. On information and belief, Optio is insolvent and has dissipated the Investors' capital by diverting it to Sovren, such that proceeding against Optio alone would be useless. In the alternative, Plaintiffs assert this claim together with their claims against Optio and stand ready to demonstrate exhaustion of remedies against Optio as required.

96. As a direct and proximate result of the Guarantors' breach, the Investors are entitled to recover the guaranteed obligations, together with the reasonable attorneys' fees, costs, and expenses provided in the Guaranty.

**COUNT VIII – UNJUST ENRICHMENT *(AGAINST SOVREN)***

97. Plaintiffs incorporate by reference the preceding paragraphs as though fully set forth herein. This claim is pleaded in the alternative to Plaintiffs' contract claims.

98. Under Utah law, unjust enrichment requires (1) a benefit conferred on one person by another; (2) an appreciation or knowledge by the conferee of the benefit; and (3) the acceptance or retention of the benefit under circumstances that make it inequitable for the conferee to retain the benefit without payment of its value.

99. The Investors' capital, diverted from Optio, conferred a benefit on Sovren by funding Sovren's payroll obligations. Sovren was in fact enriched by that benefit.

100. On information and belief, Sovren appreciated and had knowledge of the benefit and knew the funds originated as the Investors' capital.

101. Under the circumstances—Sovren's receipt and retention of funds it knew or should have known were diverted from the Investors—it is inequitable for Sovren to retain the benefit without payment of its value.

102. The Investors are entitled to restitution and to the imposition of a constructive trust over the diverted funds and their traceable proceeds.

**COUNT IX – CIVIL CONSPIRACY**
***(AGAINST OPTIO, ELGEBALY, FERRE, AND SOVREN)***

103. Plaintiffs incorporate by reference the preceding paragraphs as though fully set forth herein.

104. Under Utah law, civil conspiracy requires (1) a combination of two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result. A conspirator may be held liable for the unlawful acts of a co-conspirator committed in furtherance of the conspiracy, even if the conspirator did not itself commit the underlying wrong.

105. On information and belief, Optio, Elgebaly, Ferre, and Sovren combined and reached a meeting of the minds to accomplish the object of diverting the Investors' capital from Optio to Sovren and to conceal that diversion from the Investors.

106. In furtherance of the conspiracy, the Defendants committed unlawful overt acts, including the fraudulent misrepresentations described above and the diversion of the Investors' capital to Sovren's payroll.

107. As a direct and proximate result of the conspiracy, the Investors have been damaged in an amount to be proven at trial, and each Defendant is jointly and severally liable for those damages.

**COUNT X – AIDING AND ABETTING BREACH OF FIDUCIARY DUTY**
***(AGAINST SOVREN)***

108. Plaintiffs incorporate by reference the preceding paragraphs as though fully set forth herein.

109. Utah recognizes a cause of action for aiding and abetting a breach of fiduciary duty; a party that knowingly joins a fiduciary in wrongful acts by which the fiduciary breaches its duties is jointly and severally liable with the fiduciary, and the gravamen of the claim is the defendant's knowing participation in the breach.

110. As managers, officers, and controlling principals entrusted with the Investors' capital, Optio and the individual Defendants owed fiduciary duties in the handling of that capital.

111. On information and belief, Sovren knowingly participated in the breach of those duties by receiving and retaining the Investors' capital to fund its payroll, with knowledge that the funds were being wrongfully diverted.

112. As a direct and proximate result, the Investors have been damaged in an amount to be proven at trial, and Sovren is jointly and severally liable.

**COUNT XI – FRAUDULENT TRANSFER (UTAH UNIFORM VOIDABLE TRANSACTIONS ACT, UTAH CODE ANN. § 25-6-101 ET SEQ.)**
***(AGAINST OPTIO AND SOVREN)***

113. Plaintiffs incorporate by reference the preceding paragraphs as though fully set forth herein.

114. The Investors are creditors of Optio, and Optio is a debtor, within the meaning of the Utah Uniform Voidable Transactions Act.

115. Optio's transfer of the Investors' capital to Sovren is voidable under Utah Code Ann. § 25-6-202(1)(a) because it was made with actual intent to hinder, delay, or defraud the Investors. The badges of fraud present here include that, on information and belief, the transfer was to an insider, was concealed, and occurred when Optio was insolvent or became insolvent as a result.

116. The transfer is also voidable under Utah Code Ann. § 25-6-203 because Optio did not receive a reasonably equivalent value in exchange for the transfer and was insolvent at the time or became insolvent as a result.

117. The Investors are entitled to avoidance of the transfer to the extent necessary to satisfy their claim, attachment of the transferred funds, an injunction against further disposition, appointment of a receiver, and other relief under Utah Code Ann. § 25-6-303.

118. The Investors are further entitled to a money judgment against Sovren, as the first transferee or the person for whose benefit the transfer was made, for the value of the transferred funds or the amount necessary to satisfy their claim, whichever is less, under Utah Code Ann. § 25-6-304.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs MSH Oil, LLC and Blue Chip Capital LLC respectfully request that the Court enter judgment in their favor and against Defendants as follows:

a. On Counts I and II, awarding compensatory damages against Optio in an amount to be proven at trial, together with prejudgment interest, costs, and reasonable attorneys' fees under Section 8.10 of the Agreement;

b. On Counts III and IV, awarding compensatory damages against Optio, Elgebaly, and Ferre in an amount to be proven at trial, and punitive damages on Count III;

c. On Count V, awarding rescission and recovery of the consideration paid for the Preferred Units, together with interest at 12% per year from the date of payment, costs, and reasonable attorneys' fees, and up to treble the consideration paid, against Optio, Elgebaly, and Ferre under Utah Code Ann. § 61-1-22;

d. On Count VI, awarding damages against Optio, Elgebaly, and Ferre in an amount to be proven at trial, together with rescission where available, under Section 10(b) of the Securities Exchange Act, Rule 10b-5, and Section 20(a);

e. On Count VII, awarding judgment against Elgebaly and Ferre, jointly and severally, for the guaranteed obligations, together with reasonable attorneys' fees, costs, and expenses under the Guaranty;

f. On Count VIII, awarding restitution against Sovren and imposing a constructive trust over the diverted funds and their traceable proceeds;

g. On Count IX, awarding damages against Optio, Elgebaly, Ferre, and Sovren, jointly and severally, in an amount to be proven at trial;

h. On Count X, awarding damages against Sovren, jointly and severally, in an amount to be proven at trial;

i. On Count XI, avoiding the transfer of the Investors' capital to Sovren, awarding a money judgment against Sovren under Utah Code Ann. § 25-6-304, and granting attachment, injunctive relief, appointment of a receiver, and such other relief as is available under Utah Code Ann. § 25-6-303;

j. Awarding pre- and post-judgment interest, costs of suit, and reasonable attorneys' fees as permitted by contract and by law; and

k. Granting such other and further relief as the Court deems just and proper.

## VII. JURY DEMAND

Plaintiffs demand a trial by jury on all claims and issues so triable.

DATED this 18th day of September 2026.

GREENBERG TRAURIG, LLP

*/s/ Nicholas Peterson*
Daniel J. Wadley
Nicholas P. Peterson

FIGARI + DAVENPORT, LLP
Bill E. Davidoff (*pro hac vice forthcoming*)

*Attorneys for Plaintiffs MSH Oil, LLC and Blue Chip Capital LLC*